OPINION
{¶ 1} Shannon Meyers was found guilty by a jury in the Clark County Court of Common Pleas of complicity to commit felonious assault, with a firearm specification, and she was sentenced accordingly. Meyers appeals from her conviction and sentence.
 {¶ 2} On July 18, 2005, Meyers was indicted for complicity to commit felonious assault, including a firearm specification. On November 18, 2005, the felonious assault case (Case No. 05 CR 593) was consolidated with another case in which Meyers had been charged with intimidation (Case No. 05 CR 859). These matters were tried to a jury on December 6, 2005.
 {¶ 3} The state's evidence established that the incident that gave rise to the felonious assault charge was a drive-by shooting on Springmont Avenue in Springfield. A man shot at Dee Carter several times from a car outside her home, and one of the shots hit her in the chin. According to Carter and another witness, Meyers was the driver of the car from which the shots were fired. Carter and Meyers knew each other prior to this incident. The incident that gave rise to the intimidation charge occurred several months later at a Kroger store, where Meyers allegedly called Carter a snitch and threatened to shoot her in the face again.
 {¶ 4} The jury found Meyers guilty of complicity to commit felonious assault, with the firearm specification, but not guilty of intimidation. The trial court sentenced Meyers to eight years for complicity to commit felonious assault, to be served consecutively with three years of actual incarceration on the firearm specification.
 {¶ 5} Meyers raises five assignments of error on appeal.
 {¶ 6} I. "THE TRIAL COURT ERRED IN ADMITTING INADMISSIBLE HEARSAY EVIDENCE."
 {¶ 7} Meyers argues that her constitutional right to confront her accusers was violated by the admission of hearsay testimony at trial, notwithstanding the fact that this testimony might have been admissible pursuant to court rules or statute. She relies onCrawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, in support of her argument.
 {¶ 8} In Crawford, the Supreme Court rejected the practice of allowing the use of an unavailable witness's out-of-court statement if it had sufficient indicia of reliability on the basis that such a practice violated the accused's right to confront the witnesses against him. Crawford held that a testimonial statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. Id. at 59. Thus, the threshold determination is whether the hearsay statements in question are properly characterized as "testimonial."
 {¶ 9} The Supreme Court recognized that there are several "core classes" of testimonial statements. These include "ex parte in-court testimony or its functional equivalent," such as affidavits and prior testimony that the defendant was unable to cross-examine; "extrajudicial statements contained in formalized testimonial materials, such as * * * depositions, * * * or confessions;" and statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51-52.
 {¶ 10} Meyers contends that several hearsay statements admitted against her at trial were testimonial and therefore violated the rule set forth in Crawford. These statements were: 1) Carter's testimony that her friend, Terry Trent, had told her before the shooting that Meyers and another person were riding around her house; 2) Police Officer Clark's testimony that, during his investigation of the shooting, neighbor James Edwards had reported that the car from which the shots were fired resembled one that he had seen dropping off a classmate at school; 3) Clark's testimony that Carter had identified Meyers as the shooter and had reported having a feud with her; and 4) Police Officer Hobbs' testimony about an encounter between Carter and Meyers a few months after the shooting, during which Meyers had allegedly threatened to shoot Carter again.
 {¶ 11} Terry Trent's statement that Meyers was riding up and down the street just before the shooting, as recounted by Carter at trial, was not a testimonial statement, nor was it offered for the truth of the matter asserted. Rather, this testimony was offered to explain Carter's conduct in coming out of her house. Because the statement attributed to Trent was not testimonial, Meyers' inability to cross-examine Trent did not violate the confrontation clause or Crawford.
 {¶ 12} We will assume, for the sake of argument, that all of the other statements to which Meyers objects were testimonial because they were made to police officers and an objective witness could have reasonably anticipated that they would be used at trial. We conclude, however, that none of these statements ran afoul of Crawford. Carter and James Edwards each testified at trial. As such, they were not unavailable as contemplated byCrawford, and Meyers had the opportunity to cross-examine them. Indeed, Carter was recalled to the stand at the end of the state's case, but Meyers did not take that opportunity to question her about the statements that had been attributed to her by Clark and Hobbs. Although Edwards testified prior to Clark, he was questioned on direct and cross examination about inconsistencies between his trial testimony and his prior statements to police regarding the car he saw at the time of the shooting. Thus, with respect to both of these witnesses, Meyers had precisely the opportunity for confrontation that the constitution requires.
 {¶ 13} Finally, while the officers' testimony to which Meyers objects appears to have been hearsay, we are confident, based on our review of the record, that the statements in question did not affect the outcome of the case.
 {¶ 14} The first assignment of error is overruled.
 {¶ 15} II. "THE TRIAL COURT ERRED IN ADMITTING INADMISSIBLE `OTHER ACTS' EVIDENCE."
 {¶ 16} Meyers claims that the trial court erred in permitting the state to elicit testimony from Carter and a police officer that, several months after the shooting, Meyers had threatened Carter and called her a snitch when they saw each other at a Kroger store. Meyers claims that this evidence of "other acts" was inadmissible pursuant to Evid.R. 404(B) because it was not relevant to the motive for the prior incident.
 {¶ 17} The encounter at Kroger formed the basis for the intimidation charge against Meyers for which she was on trial. As such, it was not an act "other" than those charged, and evidence regarding that offense was properly admitted.[1]
 {¶ 18} The second assignment of error is overruled.
 {¶ 19} III. "LEADING QUESTIONS BY THE STATE DEPRIVED DEFENDANT OF A FAIR TRIAL."
 {¶ 20} IV. "THE TRIAL COURT ERRED IN PERMITTING THE STATE TO IMPEACH ITS OWN WITNESS."
 {¶ 21} Under the third assignment of error, Meyers objects to two leading questions that were asked by the state at trial. Under the fourth assignment of error, Meyers claims that, through one of its leading questions, the state improperly attempted to impeach its own witness.
 {¶ 22} A leading question is one that "suggests to the witness the answer desired by the examiner." State v. Drummond,111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, quoting 1 McCormick, Evidence (5th Ed. 1999) 19 Section 6. Leading questions are generally disfavored on direct examination. Evid.R. 611(C).
 {¶ 23} The first question was directed to Carter and related to the incident at Kroger which formed the basis for the intimidation charge. The prosecutor asked Carter:
 {¶ 24} "Do you ever remember her [Meyers] stating to you that, `Don't worry about watching your back. You better watch your head because I'm going to shoot you in the face again.'?"
 {¶ 25} Carter answered affirmatively, then the trial court sustained an objection to the leading nature of the question. As such, the trial court took the appropriate corrective action. Moreover, Meyers's acquittal on the intimidation charge — which suggests that the jury did not credit this statement — belies her claim that the question deprived her of a fair trial.
 {¶ 26} The second leading question to which Meyers objects was directed to James Edwards, the neighbor who testified about the car he had seen on the street around the time of the shooting. At trial, he testified that he had a seen a white car with a tire on the back, but that he had never seen the vehicle before and did not know whose it was. The prosecutor and Edwards then had the following exchange. The first question is the one to which Meyers objects in the third assignment.
 {¶ 27} Q: "So if an officer comes in and testifies that you told him that you knew whose car it was, you never told an officer that?
 {¶ 28} A: "I didn't say I knew whose car it was. * * * I said there was a car like that. I ain't say nobody's name in it `cause I didn't know nothing about it.
 {¶ 29} Q: "Okay. And what kind of car did you tell him it was like?
 {¶ 30} A: "It was a white car with a tire on the back, a four-door.
 {¶ 31} Q: "Okay. And had you ever known Shannon Meyers to drive that type of vehicle?
 {¶ 32} A: "No."
 {¶ 33} The prosecutor's question obviously anticipated Officer Clark's subsequent testimony that, when he had interviewed Edwards the night of the shooting, Edwards had described the car as a four-door, cream-colored Lincoln with a tire on the back that was similar to one he had seen at school dropping off a fellow student, Tim Meyers.
 {¶ 34} The prosecutor's question to Edwards did not suggest an answer so much as it attempted to clarify inconsistencies between his trial testimony and his statement to the police. As such, it is not fairly classified as a leading question.
 {¶ 35} Meyers also characterizes the question as an attempt by the state to impeach its own witness. The state responds that, "[a]lthough there was no declaration as such that this witness was hostile, the overall tenor of the examination, even from a cold record, suggests that the witness was a reluctant 17-year-old who was being evasive and uncooperative." In other words, the state seems to argue that it should have been given some latitude to treat Edwards as a hostile witness, even though it had not formally requested such a designation.
 {¶ 36} According to Officer Clark, in his interview on the night of the shooting, Edwards stated that the car he saw was "similar to a vehicle that a parent used to drop off a student at the school" he attended. He identified the student as Tim Meyers and the parent as Shannon Meyers. At trial, Edwards provided the same basic description of the car that he had given to Officer Clark, but stated that he did not know whose vehicle it was. He denied having said that Shannon Meyers drove that type of vehicle, and he claimed to have seen Meyers picking up her son in a different car.
 {¶ 37} Although Edwards had not been declared a hostile witness, he was clearly reluctant to incriminate Meyers, and even offered testimony at trial that he had seen her in a different car from the one he had previously described. The trial court acted within its discretion in permitting the state to question Edwards about his prior inconsistent statements.
 {¶ 38} The third and fourth assignments of error are overruled.
 {¶ 39} V. "THE TRIAL COURT ERRED IN IMPOSING A THREE YEAR SENTENCE ON DEFENDANT FOR BRANDISHING A FIREARM."
 {¶ 40} In her fifth assignment of error, Meyers asserts that the trial court erred in finding her guilty and sentencing her on the firearm specification, when there was no evidence presented at trial that she had brandished a firearm. Meyers's argument ignores the language of the complicity statute, which provides:
 {¶ 41} "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F).
 {¶ 42} Pursuant to this statute, even if Meyers was an unarmed accomplice, she was properly charged with the firearm specification, as well as with felonious assault. Thus, she was subject to the mandatory three-year term of incarceration. SeeState v. Chapman (1986), 21 Ohio St.3d 41, 42-43,487 N.E.2d 566.
 {¶ 43} The fifth assignment of error is overruled.
 {¶ 44} The judgment of the trial court will be affirmed.
Brogan, J. and Walters, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Meyers did not object to the state's motion to consolidate these offenses for trial in the trial court and she has not challenged the consolidation on appeal.