[Cite as *State v. Burnham*, 2010-Ohio-3275.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 09 MA 82 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| DANIEL BURNHAM, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:  Criminal Appeal from Mahoning
County Court No. 4,
Case No. 2008 CRB 01120AUS.

JUDGMENT:  Affirmed.

APPEARANCES:
For Plaintiff-Appellee:  Attorney Paul J. Gains
Prosecuting Attorney
Attorney Ralph M. Rivera
Assistant Prosecuting Attorney
21 W. Boardman St., 6th Floor
Youngstown, OH 44503

For Defendant-Appellant:  Attorney Damian Billak
City Centre One Bldg.
100 Federal Plaza East, Suite 101
Youngstown, OH 44503

Attorney Rhys Cartwright-Jones
42 N. Phelps Street
Youngstown, OH 44503

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Gene Donofrio

Dated: June 16, 2010

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court, and the parties' briefs. Defendant-Appellant, Daniel E. Burnham, appeals the decision of the Mahoning County Court No. 4 convicting him of one count of assault pursuant to R.C. 2903.13(A) and sentencing him accordingly. On appeal, Burnham argues that his conviction was against the sufficiency and the manifest weight of the evidence. He also contends that the trial court committed plain error with regard to several evidentiary matters. Upon review, all of Burnham's arguments are meritless.

{¶2} Any rational fact-finder could have found the essential elements of assault proven beyond a reasonable doubt. The trial court did not commit plain error by allowing one of the State's witnesses to testify about out-of-court statements made by her unidentified friend. Finally, in convicting Burnham the trial court did not clearly lose its way so as to create a manifest miscarriage of justice. Accordingly, we affirm the judgment of the trial court.

### Facts and Procedural Background

{¶3} On October 8, 2008, Burnham was charged by complaint with one count of assault, pursuant to R.C. 2903.13(A), and one count of complicity, pursuant to R.C. 2923.03, both misdemeanors of the first degree. These charges stemmed from an altercation at Billy's Bar in Austintown, during which it was alleged that Burnham punched a man named William Grimm (William), causing injury to William's face. The case proceeded to a bench trial on April 1, 2009.

{¶4} William testified that on the evening of September 13, 2008, he went to Billy's Bar with his wife Diana to watch part of a football game where they stayed for approximately two hours. As William and Diana exited the bar, William said someone punched him in the jaw and he fell unconscious to the ground. William was unable to identify who hit him. When he regained consciousness, he walked out of the bar and to his truck. William stated he did not know why he was attacked and claimed he did nothing to provoke the incident. After the assault, he and Diana went home so he could change out of his bloody clothing and thereafter the two went to the hospital. As a result of the assault, William suffered a broken nose, a hurt back, and his eyes were black and

blue and had blood in them.

**{¶5}** Diana testified that while at Billy's Bar with her husband she consumed half of a beer. They sat at a table which was about 20-30 feet from the exit. The bar was very crowded and a lot of people were standing. After the football game ended, she and William decided to leave. Diana walked towards the exit, with William following behind her, holding her hand. Neither she nor her husband bumped into anyone or said anything mean-spirited to anyone on their way out. Suddenly, William let go of Diana's hand and Diana heard a loud commotion behind her. She turned around to look and saw William on the ground with several young men circled around him, kicking him while he was unconscious and unable to defend himself. Diana tried to throw herself onto William to protect him, but several people pushed her away. When she finally reached William, she saw Burnham, straddled over William and punching William in the face repeatedly while he lay unconscious on the floor. Diana identified Burnham as the defendant in the courtroom.

**{¶6}** Diana testified that earlier in the evening, before the fight, Burnham was dancing with another man at the bar. One of Diana's friends pointed out Burnham dancing and told Diana the man's first name was Daniel. After the fight, while Diana was at the hospital with her husband, Diana called her friend and asked for the first and last name of the man who was dancing because that was the same man she later saw hitting William. This friend had left Billy's Bar prior to the assault. Diana agreed there was no question in her mind that Burnham was the individual she saw hitting her husband that night.

**{¶7}** Bar owner Julie Brauer testified she was at Billy's Bar that evening. She said she was familiar with Burnham as he was a regular customer. When the scuffle broke, Brauer was on the opposite end of the bar. She ran over to see what was happening, however, by the time she made it to the area where the fight took place everyone had scattered into the parking lot. She did not see William on the floor. Brauer recalled passing Burnham as she walked from the other side of the bar to the area where the scuffle took place.

**{¶8}** Burnham testified in his own defense. He claimed he was playing darts at

the rear of the bar with his friend Thomas Desmond when he heard a fight break out near the side door. Burnham said he turned to look but did not leave the dart area. From about 40 feet away, he saw scuffling and then saw a group of people exit the bar. Burnham testified that Desmond went to see what happened and told him there was a fight, but that everyone involved left the bar. He said that he does not know William and had no reason to be mad at him that evening. He denied striking William and denied taking part in the beating in any way.

{¶9} Burnham's friend Desmond also testified for the defense. Desmond said that while he was playing darts with Burnham he heard a female screaming at the front of the bar and ran up to see what was happening. He said that by the time he got there the commotion had moved outside to the parking lot. Once outside, Desmond saw two men rolling around on the ground fighting, and heard someone comment something to the effect of "that's my F-ing wife." He identified one of the men as William, and said William had blood on his shirt and face and appeared to be losing the fight.

{¶10} Desmond said he never saw four or five men beating on one person. He claimed he never saw Burnham outside and he never saw Burnham hit William. Desmond said he tried to control the mass of people outside by telling everyone they either needed to go home or get in the bar. Desmond testified he made that statement in an attempt to prevent further fighting. He admitted that Brauer, the bar owner, is his cousin. He admitted he did not try to call the police, nor did he request that the bartender call police.

{¶11} After considering all the evidence, the trial court found Burnham guilty of the assault charge and not guilty of the complicity charge. The court sentenced Burnham to 180 days in jail with 150 days suspended, a $250 fine plus court costs, twelve months of community control, and restitution to the victim for out-of-pocket expenses related to the injuries. The court also ordered that Burnham have no contact with the victim or his family.

{¶12} Burnham, through his counsel, filed a motion to modify his sentence on April 10, 2009, requesting that he be permitted to serve the remainder of the sentence on electronically-monitored house arrest.

{¶13} On April 22, 2009, the court granted the motion, for good cause shown, namely that Burnham had identified the other assailants and agreed to testify against them. The trial court thus ordered Burnham released from jail that day, and suspended the balance of Burnham's sentence. The court ordered that all other terms and conditions of Burnham's community control would remain in full force and effect.

**Sufficiency**

{¶14} In his first assignment of error, Burnham asserts:

{¶15} "The trial court based its conviction on insufficient evidence."

{¶16} Initially, we note that Burnham's sufficiency argument as presented is entirely based upon his claim that various pieces of evidence were inadmissible. Specifically, Burnham contends that the only evidence implicating him as the attacker, i.e., Diana's testimony, was improperly admitted.

{¶17} However, in *State v. Peeples*, 7th Dist. No. 07 MA 212, 2009-Ohio-1198, this court rejected the notion that an appellate court must first determine whether any evidence was inadmissible and then review the sufficiency of only the admissible evidence. Id. at ¶16. Rather, in reviewing whether a conviction is supported by sufficient evidence, "[i]t is well-established that the appellate court is to consider *all* of the testimony before the jury, *whether or not it was properly admitted. State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126, ¶80, citing *Lockhart v. Nelson* (1988), 488 U.S. 33, 40-42, 109 S.Ct. 285, 102 L.Ed.2d 265. See, also, *State v. Goff* (1998), 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (failing to use the word "admissible" before "evidence" in the standard sufficiency test)." (Emphasis sic.) *Peeples* at ¶17.

{¶18} Thus, we will first address the sufficiency challenge looking at the totality of the evidence presented at trial, and then separately analyze Burnham's evidentiary arguments. "Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. Thus, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id. "In reviewing the record for sufficiency, '[t]he

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Smith* at 113 (citation omitted).

**{¶19}** Burnham was convicted of one count of assault pursuant to R.C. 2903.13(A) which provides that "no person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2903.13(A). Viewing the evidence in the light most favorable to the State, there is sufficient evidence regarding each element of the crime. Diana testified that she saw Burnham punch William in the face repeatedly while William lay unconscious on the floor of the bar. William testified that he received injuries to his face and eyes from this beating. Any rational fact-finder could have found the essential elements of assault proven beyond a reasonable doubt. Thus, Burnham's conviction is supported by sufficient evidence.

### Evidentiary Issues

**{¶20}** Burnham also contends within his first assignment of error that the trial court erred by admitting Diana's testimony which identified Burnham as William's assailant. He claims Diana's testimony was improper for several reasons: (1) it violated his Confrontation Clause rights; (2) it was inadmissible hearsay; and (3) it was the product of illegal leading questions by the prosecutor. Specifically, Burnham takes issue with Diana's testimony that her friend told her one of the men they saw dancing at the bar earlier in the evening was named Daniel Burnham.

**{¶21}** However, as Burnham concedes, the defense did not object to Diana's testimony at trial. It is well-established that the failure to object at a time when the problem could have been avoided waives all but plain error. See, e.g., *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, at ¶132. See, also, Evid.R. 103(A)(1), (D); Crim.R. 52(B).

**{¶22}** Crim.R. 52(B) provides: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This rule places three limitations on an appellate court's ability to recognize plain error: (1) there must be an error, i.e., a deviation from a legal rule; (2) the error must be an obvious defect in the trial proceedings; and, (3) the error must have affected the outcome of the

trial. *State v. Barnes* (2000), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Even if an error is plain, this court is not obligated to correct that error as the decision to correct plain error is discretionary. Id. Importantly, plain error only need be corrected "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, at paragraph three of the syllabus.

**{¶23}** The trial court did not commit plain error. First, Diana's testimony that her friend told her Burnham was one of the men dancing at the bar did not violate Burnham's Confrontation Clause rights. The Sixth Amendment's Confrontation Clause only applies to testimonial statements. *Crawford v. Washington* (2004), 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177. For Confrontation Clause purposes, a testimonial statement includes statements that fall into three "core classes": (1) ex parte in-court testimony or its functional equivalent, i.e., material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, and (3) statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at ¶19, 36, following *Crawford*. Here, Diana testified she called her friend and asked for the full name of the man they saw dancing earlier that evening. Diana related that her friend told her the man's name was Daniel Burnham. We conclude this statement does not fall into any of the above classes and is nontestimonial. Cf. *State v. Meyers*, 2d Dist. No. 2006 CA 2, 2006-Ohio-6125, at ¶10 (witness's testimony that friend told her before the shooting that defendant was riding around her house was nontestimonial).

**{¶24}** Moreover, Diana's testimony regarding what her friend told her is not hearsay. "Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Here, Diana's testimony that her friend told her one of the

men they saw dancing was named Daniel Burnham was not offered to prove the truth of the matter asserted, but rather to provide context regarding Diana's observation of Burnham earlier that evening and how she learned his full name.

**{¶25}** Alternatively, Burnham contends that Diana's testimony identifying Burnham should not have been admitted because it was the product of illegal leading questions by the prosecutor. We disagree. Diana's initial identification testimony was the product of open-ended questions. Diana testified she saw Burnham, straddling over William on his knees and punching him in the face repeatedly while William lay unconscious on the floor. Diana then identified Burnham as the defendant in the courtroom.

**{¶26}** During direct and cross-examination, Diana testified that earlier in the evening, before the fight, Burnham was dancing with another man at the bar. She said that one of her friends pointed out Burnham dancing and told Diana the man's first name was Daniel. Diana's friend was not present at the time of the assault against William; she had already left the bar. After the fight, while Diana was at the hospital with William, she called her friend and asked for the first and last name of the man who was dancing because that was the same man she later saw hitting William.

**{¶27}** In order to later clarify that testimony on redirect, the prosecutor did use some leading questions:

**{¶28}** "Q. Ma'am, I'm going to ask you a question. Pay attention, okay? What drew your attention to this defendant? Was it previously he was dancing in Billy's Bar with another male?

**{¶29}** "A. Yes.

**{¶30}** "Q. And your lady friend told you who he was by name?

**{¶31}** "A. Yeah.

**{¶32}** "Q. But you couldn't remember the name when it was important to tell the police who it was that you saw hitting, striking you husband with his fist?

**{¶33}** "A. Yeah.

**{¶34}** "Q. So you had to call her to refresh your memory?

**{¶35}** "A. Yes.

**{¶36}** "Q. So actually, the defendant here was the person who drew the attention

of the bar patrons as to what he was doing with his male friend, correct?

{¶37} "A. Yeah.

{¶38} "Q. When your husband saw him dancing with another guy, did your husband make a disparaging remark about two men dancing?

{¶39} "A. No. They weren't dancing together like - -

{¶40} "Q. What were they doing?

{¶41} "A. Just like dancing. All I remember is that's how I knew that was the same kid that was on top of him.

{¶42} "Q. Because you had seen him earlier that evening?

{¶43} "A. Correct.

{¶44} "Q. Any question in your mind that this is the individual that you saw hitting your husband?

{¶45} "A. No.

{¶46} "Q. Huh?

{¶47} "A. No. There's no question, sir."

{¶48} The use of leading questions by the prosecutor does not constitute plain error in this case. "[E]ven on direct examination, leading questions are not strictly prohibited. The portion of the rule allowing leading questions to develop testimony is very broad. The trial court has latitude to exercise sound discretion in determining whether to allow leading questions on direct examination." *State v. Stragisher*, 7th Dist. No. 03 CO 13, 2004-Ohio-6797, at ¶88; see, also, Evid.R. 611(C).

{¶49} In *Stragisher*, this court held that the trial court did not abuse its discretion by allowing the use of leading questions by the prosecutor during redirect of the state's witnesses. This court noted that "if the prosecutor already elicited the evidence from the witness on direct examination without the use of leading questions or the defendant elicited the evidence on cross-examination, then the use of leading questions to review the testimony on re-direct is permissible." Id. at ¶89. This court concluded that the use of leading questions was proper because the "prosecutor was just reviewing prior testimony and summing it up for quick reconfirmation." Id. at ¶90.

{¶50} In this case, like in *Stragisher*, the prosecutor was merely reviewing prior testimony and summing it up for reconfirmation. All of the testimony elicited from Diana via the leading questions on redirect had already been elicited during earlier questioning. Moreover, as aforementioned, even assuming arguendo there was error in admitting the testimony, it would not rise to the level of plain error as Burnham cannot demonstrate the outcome of trial would have been any different. Thus, the trial court did not commit plain error by permitting the leading questions, or by admitting the testimony that resulted from them. Accordingly, Burnham's first assignment of error is meritless.

## Manifest Weight

{¶51} In his second assignment of error, Burnham asserts:

{¶52} "The manifest weight of the evidence supported acquittal."

{¶53} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶54} "Weight of the evidence concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. However, a conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. Id. This is so because the trier of fact is in a better position to determine credibility issues, since he personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212.

{¶55} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the

factfinder lost its way.'" *State v. Pallai*, 7th Dist. No. 07 MA 198, 2008-Ohio-6635, at ¶31, quoting *State v. Woulard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, at ¶81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

**{¶56}** Burnham argues that even if this court finds there was sufficient evidence supporting his conviction, that the greater weight of evidence supports acquittal. However, the outcome of this case essentially turned on a credibility call by the trial court as fact-finder. The court could have believed Burnham and his friend Desmond, who both testified that Burnham did not participate in the beating. On the other hand, the court could have believed Diana's testimony that Burnham punched William in the face repeatedly after he had fallen unconscious to the ground. Neither version of events is completely unbelievable, and therefore we defer to the credibility determination made by the trier of fact. The trial court did not clearly lose its way so as to create a manifest miscarriage of justice. Accordingly, Burnham's second assignment of error is meritless.

## Conclusion

**{¶57}** All of Burnham's assignments of error are meritless. His conviction is not against the weight or the sufficiency of the evidence. Further, the trial court did not commit plain error in admitting Diana's testimony identifying Burnham as William's assailant. Accordingly, the judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

Donofrio, J., concurs.