[Cite as *State v. Owens*, 2012-Ohio-3667.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 25872 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEVON D. OWENS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 06 1740 |

DECISION AND JOURNAL ENTRY

Dated: August 15, 2012

MOORE, Presiding Judge.

{¶1}   Appellant, Devon Owens, appeals his conviction by the Summit County Court of Common Pleas.  This Court affirms in part and reverses in part.

I

{¶2}   Seventy-three-year-old C.W. died as a result of manual strangulation in connection with a sexual assault.  Her granddaughter and her granddaughter's boyfriend discovered her body and found the perpetrator sitting on C.W.'s bed in a state of partial undress. The perpetrator fled through a bedroom window and disappeared.  A citizen's tip in response to a composite sketch led police to Mr. Owens, who was arrested when a DNA sample that he provided was consistent with samples obtained from the crime scene.

{¶3}   Mr. Owens was charged with aggravated murder in violation of R.C. 2903.01(B), with a death penalty specification, two counts of rape in violation of R.C. 2907.02(A)(2), and one count of aggravated burglary in violation of R.C. 2911.11(A)(1).  A jury found him guilty of

all of the charges. When the jury informed the trial court that it had concluded its deliberations and reached a verdict, one juror told the bailiff that she had received several calls from an inmate at the Summit County Jail. The bailiff noted her phone number, but did not inform the trial court until after the verdict had been announced in court. Without communicating with the attorneys, the trial court asked a deputy sheriff to investigate the matter. From the results of the investigation, the trial court concluded that the calls had no connection to the trial. The court informed the attorneys of the incident shortly before the beginning of the penalty phase. At that point, with input from counsel, the trial court individually questioned the jurors about their deliberations in light of the phone calls. The trial court concluded that the jury's deliberations were not affected and denied Mr. Owens' motion for a new trial.

{¶4} The case proceeded to the penalty phase, and the jury found that the aggravating factors supporting imposition of the death penalty did not outweigh the factors that mitigated against it. The trial court sentenced Mr. Owens to life in prison without the possibility of parole with respect to the aggravated murder conviction and to ten-year prison terms for each of the three other convictions. Mr. Owens appealed.

II

**ASSIGNMENT OF ERROR I**

**APPELLANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, §10 OF THE OHIO CONSTITUTION WERE DENIED BY THE TRIAL COURT'S EX PARTE INVESTIGATION INTO IMPROPER JUROR COMMUNICATION.**

{¶5} Mr. Owens' first assignment of error argues that the trial court erred by conducting an investigation into the phone calls received by Juror Number 4 without involving counsel until the investigation was concluded. Specifically, he has argued that the trial court's

investigation violated his constitutional rights to an impartial jury, to representation by counsel at a critical stage of the proceeding, and to due process, exemplified by a hearing on the question of jury interference at the time it was brought to the court's attention.

{¶6} Because Mr. Owens' arguments arise from an issue of potential interference with a juror, that is the starting point for our analysis. When it is alleged that outside contact with a juror has been made regarding the subject matter of the proceedings, a trial court must conduct "a hearing with all interested parties permitted to participate" to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial[.]" *Remmer v. U.S.*, 347 U.S. 227, 229-230 (1954). The hearing required in this situation affords the defendant the opportunity to demonstrate "actual bias." *Smith v. Phillips*, 455 U.S. 209, 215. *See also Sheppard v. Bagley*, 657 F.3d 338, 344 (6th Cir.2011).

{¶7} Although Mr. Owens presents this assignment of error as a novel issue, the facts of *Remmer* are similar and the remedy in that case is instructive. In *Remmer*, a third party approached a juror and suggested a bribe. *Remmer* at 228. The juror informed the judge while the trial was in progress. After consulting with the prosecuting attorney, but not with the defense, the judge requested an FBI investigation into the third party's contact with the juror. *Id.* The trial continued to conclusion while the juror was aware that the incident was under investigation, but the defendant did not learn of the alleged communication with the juror until after the jury returned a guilty verdict. *Id.* Even then, the defendant and his attorneys learned about the incident via the newspaper. *Id.*

{¶8} The Supreme Court identified two areas of concern with respect to that sequence of events: first, the potential that the third party's communication had influenced the juror at issue, and second, that the specter of an FBI investigation looming over the juror during the trial

and during deliberations may itself have unduly influenced him. *See id*. at 229. The Court emphasized that when allegations of interference with a juror are raised, the "final action" regarding the allegations must not be made ex parte, but after a hearing during which "all interested parties" may participate. *Id*. at 229-230. Although the jury in *Remmer* had already returned a verdict of guilty, the Supreme Court did not vacate the verdict and order a new trial as a matter of course. Instead, the Court remanded the case to the trial court so that the hearing described in its opinion could be held post-verdict and, "if after hearing [the conduct] is found to have been harmful, to grant a new trial." *Id.* at 230.

{¶9} Thus, even though the trial court's ex parte investigation into the alleged interference in *Remmer* was determined to be improper, the Supreme Court held that the error should be remedied by a hearing that satisfied the demands of due process. *Id.* Consistent with this result, later cases held that allegations of jury interference do not entitle the defendant to a new trial in every instance:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Phillips*, 455 U.S. at 217. Instead, "[p]ost-trial hearings are adequately tailored to this task." *Rushen v. Spain*, 464 U.S. 114, 120 (1983).

{¶10} As in *Remmer*, the trial court erred in this case by conducting an investigation into an allegation of jury interference without notifying the parties and their attorneys. But a new trial is not the appropriate remedy. In *Remmer*, the Supreme Court remanded the matter for a

hearing involving all parties during which the allegations of jury interference could be explored and the impartiality of the jurors examined. Here, although the trial court should have informed the parties when the allegation was made, it ultimately conducted a thorough hearing into the matter with the participation of both parties and concluded that the jury's decision was worthy of confidence. In that respect, we agree with the trial court's determination.

{¶11} The trial court conducted a hearing during which Juror Number 4, and then each other individual juror, was questioned about their discussion of the calls that Juror Number 4 received and any impact those discussions had on the deliberations. Juror Number 4 testified that she started receiving calls from the Summit County jail shortly after the trial began and received a total of around five calls. When the calls came, she did not perceive any threat and did not think that the calls may have been connected to the case. She recalled that after watching the video of Mr. Owens' police interview, she mentioned the phone calls in the jury room because she thought the name "Juan" may have been used. Nonetheless, Juror Number 4 testified that after another juror suggested she tell the bailiff, the conversation ended and the matter was not discussed again. She recalled that the jurors only spent one or two minutes on the matter. Juror Number 4 testified that she performed her duties in compliance with the trial court's instructions, that the phone calls did not interfere with her deliberations, and that she believed she could continue to serve as a juror in the penalty phase. With input from counsel, the trial court then conducted individual voir dire of each juror. All of the jurors indicated that the discussion about the phone calls received by Juror Number 4 did not affect their deliberations.

{¶12} We emphasize that the trial court in this case should not have conducted an investigation of the phone calls to Juror Number 4 without informing counsel. Nonetheless, we

agree with the trial court's conclusion after the *Remmer* hearing that Mr. Owens is not entitled to a new trial. His first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN NO OBJECTION WAS MADE TO INADMISSIBLE HEARSAY.**

## ASSIGNMENT OF ERROR III

**APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN DR. KOHLER WAS PERMITTED TO TESTIFY BEYOND THE SCOPE OF HER EXPERTISE WITHOUT OBJECTION.**

{¶13} Mr. Owens' second and third assignments of error argue that he received ineffective assistance of counsel because his attorneys did not object to portions of the testimony provided by the Summit County Coroner. We disagree.

{¶14} In order to demonstrate ineffective assistance of counsel, a defendant most show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

{¶15} Trial strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, ¶ 115.

The decision not to raise objections at trial, for example, may be a strategic choice. *Id.* at ¶ 103. With respect to objections:

> "[E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."

(Alterations in original.) *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir.2006).

{¶16} The parts of the Coroner's testimony with which Mr. Owens now takes issue involve her statements regarding the cause of C.W.'s death and the mechanism through which the death occurred. The Coroner summarized, in general terms, research related to the amount of pressure necessary to cause death by manual strangulation through pressure on the carotid and venus arteries and to the jugular vein. The Coroner also testified that a male of normal size could exert sufficient pressure to cause death in that way. Although Mr. Owens' attorneys did not object to any of the Coroner's testimony, they cross-examined her extensively on these issues, drawing particular attention to her conclusion that because of C.W.'s frail health, less pressure would have needed to be exerted to cause her death.

{¶17} Although trial counsel's strategy did not result in an acquittal, the record in this case supports the conclusion that Mr. Owens' trial attorneys chose not to object to portions of the Coroner's testimony as part of their trial strategy. Trial counsel was not ineffective, and Mr. Owens' second and third assignments of error are overruled.

**ASSIGNMENT OF ERROR IV**

**THE TRIAL COURT ERRED IN FAILING TO DETERMINE THE OFFENSES COMMITTED BY APPELLANT WERE ALLIED OFFENSES OF SIMILAR IMPORT AND A RESULT OF A SINGLE ACT.**

{¶18}  In his final assignment of error, Mr. Owens has argued that the trial court erred by failing to consider whether his convictions merged for purposes of sentencing as allied offenses of similar import.  We agree.

{¶19}  In *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, the Ohio Supreme Court held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id*. at syllabus.  Since then, this Court has consistently remanded cases for further proceedings in the trial court to apply *Johnson* for the first time.  *See e.g. State v. Slevin*, 9th Dist. No. 25956, 2012-Ohio-2043, ¶ 5 (remanding for consideration of allied offenses when *Johnson* was decided before sentencing, but was not addressed in the trial court.)  In light of our precedent, it is therefore appropriate to remand this case so that the trial court can apply *Johnson* in the first instance.  Mr. Owens' fourth assignment of error is sustained.

III

{¶20}  Mr. Owens' first, second, and third assignments of error are overruled.  His fourth assignment of error is sustained.  This matter is remanded to the trial court for consideration of the impact of *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CARLA MOORE
FOR THE COURT

DICKINSON, J.
BELFANCE, J.
CONCUR.

APPEARANCES:

KIRK A. MIGDAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.