[Cite as *State v. Campanalie*, 2013-Ohio-3509.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| CITY OF CUYAHOGA FALLS | | C.A. No. 26383 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEBORAH CAMPANALIE | | STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. 2011CRB03401 |

DECISION AND JOURNAL ENTRY

Dated: August 14, 2013

CARR, Judge.

{¶1} Appellant, Deborah Campanalie, appeals the judgment of the Stow Municipal Court. This Court affirms.

I.

{¶2} On November 23, 2011, the Cuyahoga Falls police filed a complaint in Stow Municipal Court charging Campanalie with one count of theft in violation of R.C. 2913.02, a misdemeanor of the first degree. The complaint arose out of an alleged shoplifting incident at the Giant Eagle on Howe Ave. in Cuyahoga Falls. The matter proceeded to a bench trial where Campanalie was tried with her co-defendant, Lisa Ramsey. The trial court subsequently found both Campanalie and Ramsey guilty of theft. The trial court sentenced Campanalie to 180 days in jail, all of which was suspended on the condition that she obey all laws for one year. Campanalie also received a $1000 fine, $900 of which was suspended on the same condition. The trial court also ordered Campanalie to avoid any contact with Giant Eagle grocery stores.

**{¶3}** On appeal, Campanalie raises two assignment of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY DENYING [DEBORAH'S] CRIMINAL[]RULE 29 MOTION FOR ACQUITTAL AS THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION.

**{¶4}** In her first assignment of error, Campanalie argues that the trial court erred by denying her motion for acquittal because the State failed to present sufficient evidence to sustain her conviction. This Court disagrees.

**{¶5}** Campanalie was convicted of theft in violation of R.C. 2913.02(A)(1), which states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exists." R.C. 2901.22(B). Pursuant to R.C. 2913.01(C), to "deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

**{¶6}** At trial, the State presented the testimony of Joani Benton, a plain clothes detective who works at Giant Eagle monitoring potential shoplifters, and Rueben Miller, a patrol officer for the Cuyahoga Falls police department. After the State rested its case, Campanalie

moved for a judgment of acquittal pursuant to Crim.R 29. The trial court promptly denied the motion. Campanalie renewed her motion at the close of the evidence. In support of her assignment of error, Campanalie argues that she did not have an intent to deprive Giant Eagle of its property. Campanalie further contends that it was Ramsey who took the items past the point of purchase, and that she cannot be held accountable for the actions of another.[1]

{¶7} Crim.R. 29(A) provides:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶8} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. Summit No. 19600, 2000 WL 277908 (Mar. 15, 2000). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

---

[1] Campanalie combined her assignments of error in her merit brief, stating that they "will be argued together as they raise similar issues of law and fact." While Campanalie set forth the legal standards for both sufficiency and manifest weight, she did not make separate arguments under each standard.

{¶9}    Joani Benton was the first witness to testify on behalf of the State.  Benton is employed by Industrial Securities as a plain clothes detective.  Once a week, Benton walks the floor at Giant Eagle looking for potential shoplifters.  On November 22, 2011, Benton was on duty at the Giant Eagle on Howe Ave. in Cuyahoga Falls.  As Benton stood in the seasonal section, she noticed Campanalie and Ramsey walk through the entrance.  Benton testified that she immediately noticed the women because they were speaking loudly to one another.  Benton began to follow the women from "the point they entered the store."  After Ramsey got on a motorized shopping cart, the two women traveled together through the seasonal section to the frozen foods section.  Each woman personally selected turkeys from the case and placed them in the basket of the motorized cart.  The women proceeded to travel through the frozen foods section and into the deli, where they picked up a pound of lunch meat and placed it in the motorized cart.  The women then traversed through the produce section and exited the store through the main entrance.  When asked if the women ever made it to the cash registers, Benton responded, "No, not even close."  When the prosecutor further asked if the women ever slowed down as though they might be looking for the cash registers, Benton answered, "No."  Benton testified that the women continued until they reached the exit and stopped briefly before "the female in the motorized cart exited first, and [] the second female exited behind her."  Benton explained that customers using motorized carts are supposed the leave the carts inside the entrance, and that they are not supposed to exit the store with them.

{¶10}  Benton found the two women together outside the store.  Benton testified that the women were "side by side" and she stopped them as they were making their way toward the parking lot.  When Benton identified herself as security, one of the women said they went outside to retrieve some money so that they could go back into the store and pay for the food.  In

the basket of the motorized cart, Benton found three turkeys and lunch meat, totaling $83.58 in value. Benton escorted the women back into the conference room inside the store and called the police.

{¶11} Officer Rueben Miller also testified on behalf of the State at trial. As part of his patrol duties, Officer Miller responds to shoplifting calls from the Giant Eagle in Cuyahoga Falls, and he responded to the call in this case. Officer Miller met Benton, Campanalie, and Ramsey in the conference room. Officer Miller spoke with the defendants in order to get their identification information, but he did not interrogate them regarding the theft. When asked if any comments were made by the defendants, Officer Miller testified that one of the women said they were picking up the turkeys because their dog was on a special diet. Officer Miller then spoke with Benton regarding the allegations. After Benton signed the complaint, Officer Miller left the store.

{¶12} The evidence presented at trial was sufficient to survive Campanalie's motion for acquittal. Upon entering the store, Campanalie and Ramsey immediately made their way to the frozen foods section where each selected turkeys from the case and placed them in the motorized cart. After subsequently securing a pound of lunchmeat from the deli, the women promptly exited the store without paying for the items they had placed in the cart. Ramsey did not leave her motorized cart inside store as mandated by store policy, and Benton stopped the women as they were "side by side" on their way to the parking lot. Benton specifically testified that the women went nowhere near the cash registers before exiting the store, nor did they give any indication that they intended to pay for the items prior to the time they were stopped outside the store. This evidence, when construed in the light most favorable to the State, was sufficient to

demonstrate that Campanalie knowingly exited the store with no intention of paying for the items she had selected.

{¶13} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} In her second assignment of error, Campanalie argues that her theft conviction was against the manifest weight of the evidence. This Court disagrees.

{¶15} Unlike an analysis of whether the State met its burden of production, a determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. Summit No. 21654, 2004-Ohio-1422, ¶ 11. Rather,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

{¶16} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶17} Both Campanalie and Ramsey testified in their own defense at trial. Ramsey testified that prior to going to Giant Eagle on the date of the incident, the women went to Walmart because Campanalie wanted to get a money order to pay her rent. Ramsey testified that while Campanalie filled out the money order, "some guy ran by and snatched her purse[.]" Ramsey further testified that when the clerk chased after the man, "[h]e dropped the purse and took off after the event." After Campanalie recovered her purse, Ramsey drove the women to Giant Eagle so that Campanalie could purchase the turkeys that were on sale. While Ramsey provided Campanalie with a ride to Giant Eagle and accompanied her into the store, she indicated that she did not do any shopping because the prices were too high.

{¶18} In regard to her recollection of the events that transpired at Walmart prior to her trip to Giant Eagle, Campanalie testified that she has severe ADD and ADHD and that she had lost her medicine at the time of the incident. Campanalie testified that she is easily distracted when she is not on her medication, stating "It's just like I'll start doing something, stop doing it, [and] start doing something else." Campanalie remembered looking over and noticing that her purse was gone. Campanalie recollected feeling "frozen" when she noticed her purse was gone. Campanalie testified that she still had not made sense of what happened to her purse, and that she remembered "staring at my cart and some woman [] coming toward me with my purse."

{¶19} After Campanalie purchased several items at Walmart, she rode with Ramsey to Giant Eagle to take advantage of the turkey sale. When asked how she knew that turkeys were on sale, Campanalie responded, "I think one of my neighbors told me because everybody in the complex around me knows about my dog." Campanalie testified that upon entering the store, she walked ahead to check and see if there were any sales in the cat food aisle while Ramsey was getting a motorized cart. Campanalie indicated that she did not walk with Ramsey because "the

buggy's too slow." Campanalie testified that when the women met back near the frozen turkey case, a Giant Eagle employee helped them place their turkeys in the cart. Campanalie admitted that she placed the turkeys she selected in Ramsey's cart. Campanalie testified that she then went to the deli to get some lunch meat while Ramsey "stopped over [] by the sweet stuff."

{¶20} In regard to what happened prior to exiting the store, Campanalie explained, "I started fumbling through my purse and I was like oh, my God, they took my card, they took my card. And I start yelling. * * * And I thought I checked it, but I'm like thinking, okay, maybe I didn't check it because I questioned myself, especially when I'm not on my medication. And I thought oh, my God. And I couldn't find it." Campanalie continued, "I was telling Lisa we got to get out of here, we got to get out of here. They must have taken my card. We've got to go. So I said we've got to come back so I grabbed an ad and she went ahead" Campanalie explained that she stopped to pick up an ad on her way out of the store to remind herself that the turkeys were on sale. Campanalie testified that as she was stopped exiting the store, she did not immediately realize what was going on. As Campanalie started to scream at Ramsey urging her to find her debit card, Benton informed Campanalie that her debit card was in her hand. When asked if the card was in her hand the entire time, Campanalie responded, "It was in my hand." Campanalie further indicated that she was "kind of confused" but she did offer to pay for the food.

{¶21} After a careful review of the record, this Court cannot conclude that the trier of fact created a manifest miscarriage of justice when it convicted Campanalie of theft. It is evident from the record that conflicting testimony was presented at trial. The State presented testimony demonstrating that Campanalie and Ramsey methodically moved through the store together and then exited without going anywhere near the cash register to pay for Campanalie's items.

Benton testified that while Ramsey exited the store ahead of Campanalie, she stopped them as they were "side by side" on their way to the parking lot. There was further testimony that Campanalie's debit card was in her hand when she was stopped outside the store. On other hand, Campanalie and Ramsey testified that they were separated at times as they walked through the store, and that Campanalie panicked due to the fact that she had not been taking her medication. Campanalie further testified that she exited the store unaware of the fact that she had not paid for her food. Though the parties presented conflicting testimony in this case, we note that "the trier of fact was in the best position to evaluate the credibility of witnesses, and this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge simply because the trial court chose to believe certain witnesses' testimony over the testimony of others." *State v. Ross*, 9th Dist. Wayne No. 12CA0007, 2013-Ohio-522, ¶ 16, *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances, we cannot conclude that this is the exceptional case where the trier of fact clearly lost its way.

{¶22} The second assignment of error is overruled.

III.

{¶23} Campanalie's assignments of error are overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

JOHN CHAPMAN, Assistant City Prosecutor, for Appellee.