[Cite as *State v. Davis*, 2014-Ohio-687.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 26994 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHAWN A. DAVIS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2012 01 0060(B) |

DECISION AND JOURNAL ENTRY

Dated: February 26, 2014

HENSAL, Presiding Judge.

{¶1} Shawn Davis appeals his convictions for aggravated burglary and aggravated robbery from the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} John Ruggiero testified that, on December 7, 2011, he received a call from a man named "J" who wanted to buy a video game system that he had listed for sale on the internet. Mr. Ruggiero arranged to meet J in the parking lot of an automobile parts store, but, at the last minute, J asked to meet at Mr. Ruggiero's house instead so that he could make sure the system worked before he bought it.

{¶3} Mr. Ruggiero agreed to the change in plans and returned home. A short time later, a white car dropped off a man, who walked up to his house and introduced himself as J. After they tested the video game system, J walked out to the front porch to make a phone call.

According to Mr. Ruggiero, as J talked on the phone, J moved between the inside of the house and the porch. From what Mr. Ruggiero overheard, it sounded like J was talking to the people who dropped him off.

{¶4}    After the last time J went out to the porch, Mr. Ruggiero heard people running into his house, and three men entered his living room. All three were wearing hooded sweatshirts and two of the men had them pulled up over their faces. One of the men walked over to him, put a gun to his head, and told him to get on his knees. Once Mr. Ruggiero complied, the man told Mr. Ruggiero to empty his pockets, and Mr. Ruggiero handed him approximately eighty dollars. The man took a step back and yelled for one of the other men, who had gone back out to the porch, to come and watch Mr. Ruggiero. According to Mr. Ruggiero, he took advantage of the man's inattention, reached behind his back to draw the handgun he had tucked into his waistband, and fired two shots.

{¶5}    Mr. Ruggiero testified that, after he fired his gun, the men who invaded his house ran back to the white car and drove away. A neighbor saw the men fleeing the house and realized something was amiss, so she took down the license plate number of the car and called 911. According to her, of the three men who ran out of the house, two of them got into the car and one ran down the street. Mr. Ruggiero also reported the incident to the police.

{¶6}    That same evening, Shawn Davis checked into a hospital on the other side of town with a gunshot wound to the arm. Detective Gary Shadie testified that, when he spoke to Mr. Davis at the hospital, Mr. Davis told him that he had been shot during a drug deal. According to the detective, Mr. Davis told him that he had gone to a house to buy marijuana, but there was an argument, and the owner of the house shot him. Mr. Davis also told him that, if the detective spoke to the owner of the house, the owner might claim that Mr. Davis had been trying

to rob him or steal his television set. Mr. Davis volunteered that, if he had gone to the house to rob someone, he would have used his shotgun.

{¶7} Detective Aaron Hanlon testified that, later that night, he spoke to Mr. Davis's brother, Jeremy Culver. Mr. Culver told him that he and Mr. Davis had attempted to buy marijuana from a man named John, but John shot Mr. Davis, so they left. Detective Hanlon also testified that officers found and searched Mr. Davis's white car, which had a license plate number that was only one number different than the number Mr. Ruggiero's neighbor reported.

{¶8} The Grand Jury indicted Mr. Davis for aggravated burglary and aggravated robbery, with a firearm specification for each crime. At trial, Mr. Ruggiero identified Mr. Davis as the man who held a gun to his head. The jury found Mr. Davis guilty of the offenses, and the trial court sentenced him to a total of seven years imprisonment. Mr. Davis has appealed, assigning as error that his convictions are against the manifest weight of the evidence.

## II.

APPELLANT'S CONVICTIONS FOR AGGRAVATED ROBBERY AND AGGRAVATED BURGLARY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} Mr. Davis argues that his convictions are against the manifest weight of the evidence. If a defendant asserts that his convictions are against the manifest weight of the evidence:

> [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶10}  The Grand Jury indicted Mr. Davis for aggravated burglary under Revised Code Section 2911.11(A)(2), which provides:

> No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

Pursuant to Section 2901.22(A):  "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."  The code defines "deception" as:

> [K]nowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

R.C. 2913.01(A).  A criminal trespass occurs when one "without privilege to do so * * * [k]nowingly enter[s] or remain[s] on the land or premises of another[.]"  R.C. 2911.21(A)(1). This Court recognizes that a privilege may be revoked and that a privilege to enter or remain upon the premises terminates immediately upon the commencement of an act of violence against the person granting the privilege.  *See State v. Watson*, 9th Dist. Summit No. 14286, 1990 WL 80550, *2 (June 13, 1990).

{¶11}  The Grand Jury also indicted Mr. Davis for aggravated robbery, in violation of Section 2911.01(A)(1), which provides:  "No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"  We note that, under Ohio

law, "a person may be an accomplice in an offense and prosecuted as the principal offender if, among other things, he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense." *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph two of the syllabus.

{¶12} Mr. Davis argues that the manifest weight of the evidence balances in favor of the version of events that he and Mr. Culver told police on the night of the shooting. He notes that, although detectives interviewed him and Mr. Culver separately, they gave the same story about a drug deal that had gone bad. Mr. Ruggiero's version, on the other hand, was incomplete regarding the third man who he claimed was with the brothers. According to Mr. Davis, it can be inferred from the evidence that the third man was actually an associate of Mr. Ruggiero's, who was there to provide backup during the drug transaction. That is why the third man did not get into the car with Mr. Davis and Mr. Culver after leaving Mr. Ruggiero's house.

{¶13} Mr. Davis also argues that parts of Mr. Ruggiero's testimony defy common sense. According to Mr. Ruggiero, J initially entered the house without a mask or weapon to ask about the video game system. He allegedly masked his face, however, while participating in the robbery. Mr. Davis argues that it would not make sense for J to cover his face after giving Mr. Ruggiero ample opportunity to see it earlier. Mr. Davis further argues that the police failed to do any investigation into his and his brother's version of the facts.

{¶14} It is the jury's province to take note of inconsistencies in the testimony of the witnesses and resolve or discount them accordingly. *State v. Sykes*, 9th Dist. Summit No. 25263, 2011-Ohio-293, ¶ 21. "Likewise, it is the jury's role to evaluate the credibility of the witnesses and to determine what weight to give any inconsistencies in their testimony." *Id*., quoting *State v. Gooden*, 9th Dist. Summit No, 24896, 2010-Ohio-1961, ¶ 30. "[A] verdict is not against the

manifest weight of the evidence where the jury's resolution of credibility is reasonable and where the jury ultimately chose to believe the State's witnesses as opposed to defense witnesses." *State v. Brown*, 9th Dist. Summit No. 26490, 2013-Ohio-5112, ¶ 20.

{¶15} Upon review of the record, we conclude that any gaps or inconsistencies in Mr. Ruggiero's testimony were not so significant that the jury clearly lost its way when it credited his testimony and found Mr. Davis guilty of the offenses. Mr. Davis's assignment of error is overruled.

III.

{¶16} Mr. Davis's convictions are not against the manifest weight of the evidence. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

NICHOLAS SWYRYDENKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.