[Cite as *State v. Given*, 2016-Ohio-4746.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 15 MA 0108 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JEROME GIVEN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of
                               Common Pleas of Mahoning County,
                               Ohio
                               Case No. 2014 CR 913

JUDGMENT:                      Affirmed and Remanded.

APPEARANCES:

For Plaintiff-Appellee:        Atty. Paul J. Gains
                               Mahoning County Prosecutor
                               Atty. Ralph M. Rivera
                               Assistant Prosecuting Attorney
                               21 West Boardman St., 6th Floor
                               Youngstown, Ohio 44503

For Defendant-Appellant:       Atty. Richard Hura
                               9 East Park Avenue
                               Columbiana, Ohio 44408


JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

                               Dated:  June 30, 2016

ROBB, J.

**{¶1}** Defendant-Appellant Jerome Given appeals from his conviction entered in Mahoning County Common Pleas Court for two counts of aggravated assault. Four assignments of error are raised in this appeal. In his first assignment of error, Appellant argues there was a hearsay violation at trial. In his second assignment of error, he asserts the trial court should have sua sponte granted a mistrial when a juror engaged in improper communication with a state's witness. The third assignment of error raises a manifest weight of the evidence argument. In his fourth assignment of error, Appellant argues the guilty verdicts for aggravated assault are inconsistent with the not guilty verdicts for the attendant gun specifications.

**{¶2}** For the reasons expressed below, all assignments of error lack merit. The conviction and sentence are affirmed.

### Statement of the Facts

**{¶3}** On July 11, 2014, an altercation occurred between Appellant and Charles Pete outside Appellant's house located on Compton Lane in Youngstown, Ohio. Charles was shot twice.

**{¶4}** The undisputed evidence shows Charles was on his way to pick up his girlfriend, Melissa Thomas, from work. Melissa is Appellant's ex-girlfriend and they have two children together. Charles admittedly had a few drinks prior to going to pick up Melissa.

**{¶5}** Charles drove past Compton Lane, which is a street that ends in a cul-de-sac. He saw Melissa's youngest child playing outside of Appellant's house and decided to stop, say hi, and talk to Appellant about their relationship. Appellant and Melissa were in a custody dispute over the children. Charles wanted to let Appellant know that there should not be problems between Appellant and Charles. Charles went down to the cul-de-sac, turned around, and stopped his vehicle in front of Appellant's house. Upon exiting the car, he left the car running and the driver's door open. Tr. 149, 298.

**{¶6}** At this point Charles' version of what occurred and Appellant's version of what occurred diverge.

{¶7} According to Charles, he walked up the driveway, said hi to Melissa's son, and spoke to Appellant. Tr. 134. He allegedly told Appellant there should not be problems between them because he loved the kids and Melissa. Tr. 134. At that point, Appellant told the child to go into the house. Tr. 134. Charles claimed Appellant said "I got you now mother-f****r," pulled a gun from his person, and hit Charles in the head with a gun. Tr. 135. [asterisks added to omit profanity.] Charles stated he attempted to leave when Appellant shot him in the left side of his back; his back was turned to Appellant and he was walking to the vehicle. Tr. 137-138. Charles got in the car and heard another gun shot. Tr. 139. He was shot twice. Tr. 139. Charles drove to the hospital and was in the hospital for three weeks; he was in a medically induced coma for a week.

{¶8} According to Appellant, the above version of events is inaccurate. He claimed that upon exiting the vehicle, Charles said to him, "You b***h a**, whore a**, mother-f****r curly top a** n****r. I'm going to whoop you're a** like I whoop your son's a**." Tr. 299-300. [asterisks added to omit profanity.] Appellant stated he could tell Charles was on something by the look in his eyes. Tr. 299. In response to the statements, Appellant admitted he punched Charles in the jaw. Tr. 300. Charles went back to his vehicle and got a gun. Tr. 301. There was a struggle over the gun and a shot went off. Tr. 301. Appellant claims they were still struggling over the gun when Charles got into the vehicle. Tr. 301. Charles stomped on the gas and dragged Appellant up the street; Appellant was hanging onto the driver side door that was still open. Tr. 301-302. Appellant fell off of the vehicle before it reached the end of the street.

{¶9} After the incident, Appellant got his children and wife, who were in the house, and left town; they went to a hotel in Akron. Appellant testified he was scared for their safety because Charles indicated he had friends in the neighborhood.

{¶10} Following an investigation into the matter, Appellant was indicted for attempted murder, in violation of R.C. 2903.02(A)(D) and R.C. 2923.02(A), a first-degree felony; two counts of felonious assault, in violation of R.C. 2903.11(A)(1)(D) and R.C. 2903.11(A)(2)(D), both second-degree felonies; and having a weapon under disability, in violation of R.C. 2923.13(A)(2)(B), a third-degree felony. The

attempted murder and felonious assault charges each contained attendant firearm specifications, a violation of R.C. 2941.145(A).

{¶11} The first three charges were tried to a jury. The fourth charge, weapon under disability, was tried to the bench.

{¶12} At trial, both Charles and Appellant testified to the above information.

{¶13} Officers that investigated the incident also testified. They found a revolver sticking out of the driver's seat headrest. Tr. 202, 213, 221. Three spent casing and three live rounds were in the revolver. Tr. 215-216. A bullet path from the driver's seat headrest to the front passenger seat was found with a bullet being removed from the front passenger seat. Tr. 213. There were scratches on the driver's side doors, and one officer testified Appellant looked like he "swimmed across the pavement." Tr. 219-220, 263.

{¶14} An expert from BCI testified about DNA found on the aforementioned revolver. DNA found on the trigger was not sufficient for comparison. However, DNA taken from the remainder of the gun was consistent with Appellant's DNA profile. He could not be excluded; his rate of inclusion was 1 in 22,000 people. Tr. 246. Charles was found to be inconclusive as a contributor. This meant there was data present consistent with his DNA profile, but not in a high enough amount that it could be found to be an inclusion. Tr. 242. There was also DNA from an unknown profile that was sufficient for comparison. Tr. 241.

{¶15} Melissa Thomas testified at trial, about a conversation she had with Daralynn Cooper. Tr. 171-175. Daralynn Cooper witnessed the event and relayed the events to Melissa while it was happening. Melissa, over objections, relayed that conversation to the jury; Daralynn Cooper did not testify at trial. Melissa also testified she had seen Appellant with that revolver years before when they were living together. Tr. 190.

{¶16} Christine Given, Appellant's wife, also testified. She stated she had not seen a gun in their home. Tr. 330.

{¶17} The jury returned a not guilty verdict on attempted murder. The jury also found Appellant not guilty of the felonious assault charges. However, the jury found him guilty of the inferior degree offenses, aggravated assault, in violation of

R.C. 2903.12(A)(1)(B) and R.C. 2903.12(A)(2)(B), fourth-degree felonies. It did not find him guilty of the attendant firearm specifications. 5/22/15 J.E. The trial court found Appellant not guilty of having a weapon under disability. 5/22/15 J.E.

{¶18} The two aggravated assault convictions merged for purposes of sentencing. Appellant received a 15 month prison term. It is noted in the sentencing judgment entry, the trial court indicated Appellant was being sentenced for violating R.C. 2903.12(A)(1)(B) and R.C. 2903.12(A)(1)(B). 7/9/15 J.E. This statement was clearly a clerical error; the judgment entry journalizing the jury verdict, the jury verdicts and the court's statements at sentencing indicate Appellant was found guilty of R.C. 2903.01(A)(1)(B) and R.C. 2903.12(A)(2)(B) and was being sentenced for those convictions. 5/22/15 J.E; 5/15/15 Jury Verdicts; 7/1/15 Sentencing Tr. 13.

{¶19} Appellant timely appealed raising four assignments of error.

### First Assignment of Error

"The trial court erred when it admitted the hearsay statements of Daralynn Cooper through the testimony of witness Melissa Thomas."

{¶20} This assignment of error addresses Melissa's testimony relaying the conversation she had with Daralynn Cooper. The testimony is as follows:

I got a text from Daralynn Cooper?

**Q**. Who's Daralynn Cooper?

She's my friend that lives on Compton.

* * *

**Q**. Do you know where she lives in relationship to Jerome?

**A**. She stay [sic] like three houses in between them.

* * *

**Q**. I'm not asking you what was in the text; but after you received the text, what happened?

**A**. I called Daralynn.

* * *

**Q**. Was the conversation a normal conversation that you and her would have?

**A.** It was more excitement in the conversation.

**Q**. Who was excited?

**A.** Daralynn.

**Q**. Describe what you mean by her excitement.

**A.** Just her voice.  She was just like something was wrong.

**Q**. Okay.  Did she tell you what was wrong?

**A.** Yes.

**Q**. What did she tell you?

> **Mr. Zena** [Counsel for Appellant]: Objection.
>
> **The Court**: Overruled.

**A.** She said Charles was on the street.

**Q**. Did you respond to that?

**A.** Yes.

* * *

**Q**. Okay.  What was the conversation after that?

> **Mr. Zena**: Objection, Your Honor.
>
> **The Court**:  Let me see counsel.

**(WHEREUPON, a discussion was had among court and counsel off the record and out of the hearing of the jury and court reporter, after which the proceedings continued as follow:)**

**The Court**: Objection is overruled, however, the court will make note that the objection is going to be continuing.

\* \* \*

**Q**. During this time did Daralynn tell you what was happening?

**A.** Yes, she did.

**Q**. After she yelled Charles' name a couple of times and Daralynn's boyfriend spoke, did she tell you what happened after that?

**A.** Yes, she did.

**Q**. What did she say?

**A.** She said, oh, my God, he hit him in the face with a gun.

**Q**. How did you respond?

**A.** I said, who hit who with the gun?

**Q**. And?

**A.** She said Jerome hit Charles with the gun.

**Q**. Did she tell you what happened after that?

**A.** Immediately after she said, oh, my God, he shot him.

**Q**. And what did you say?

**A.** I said, who shot who? What's going on? And she said, Jerome shot Charles.

**Q**. Did she continue to tell you what happened?

**A**. Yes. I heard tires screeching; and she said oh, my God, he wrecked your car.

**Q**. Okay. How did you respond to that?

**A**. And I just said, oh, my God.

**Q**. Did she continue to tell you what was happening?

**A**. Seconds later she asked, are you okay? And I asked, who was she talking to. She said Jerome.

**Q**. Okay. Did you continue to have a conversation with her?

**A**. I asked her to go find Charles, and I hung the phone up.

Tr. 171-175.

{¶21} In reviewing the above testimony, Appellant objected to the testimony and lodged a continuing objection. However, the basis for the objection is not on the record. The transcript indicates the objection discussion occurred off the record. Therefore, it is unclear whether the objection was based on hearsay, the Confrontation Clause, both, or for some other reason.

{¶22} In the appellate brief, Appellant argues this testimony should not have been allowed; it is hearsay and does not fall within any exception. Specifically, Appellant claims it cannot be a present sense impression due to lack of trustworthiness.

{¶23} The state counters, arguing the testimony does not violate the Confrontation Clause because Daralynn's statements were nontestimonial and the testimony falls within the hearsay exceptions of excited utterance and present sense impression.

<u>A. Hearsay</u>

{¶24} Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible, except as provided by the United States or Ohio Constitutions, by statute, or court rule. Evid.R. 802. We

review a trial court's evidentiary rulings for an abuse of discretion, provided an objection is made at trial. *State v. Mauldin*, 7th Dist. No. 09-MA-82, 2010-Ohio-4192, ¶ 70.

{¶25} Under Evid.R. 803, present sense impressions and excited utterances are not excluded by the hearsay rule, even though the declarant is available as a witness.

{¶26} A present sense impression is defined as, "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1).

{¶27} An excited utterance is defined as "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). For a statement to be admissible as an excited utterance, four prerequisites must be satisfied: (1) the occurrence of an event startling enough to produce a nervous excitement in the declarant; (2) a statement made while still under the stress of excitement caused by the event; (3) a statement related to the startling event; and (4) the declarant's personal observation of the startling event. *In re S.H.W.*, 2d Dist. No. D44918, 2016-Ohio-841, ¶ 20, citing *State v. Taylor,* 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316 (1993).

{¶28} The above testimony indicates Daralynn's statements qualify as an excited utterance or a present sense impression. Melissa indicated Daralynn was giving her personal observations of the altercation between Appellant and Charles contemporaneously with the altercation. Melissa also testified Daralynn sounded excited during the conversation. The altercation qualifies as a startling event; it was a fight between two men in the street, in a residential area, and a gun was present.

{¶29} The Second Appellate District has explained statements uttered at the time of the event or in close proximity to the event are an indication of the trustworthiness of the statements:

> The excited utterance and present sense impression exceptions to the definition of hearsay reflect "an assumption that statements or perceptions that describe events uttered during or within a short time

from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event. Moreover, the key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived—a fact which obviously detracts from the statement's trustworthiness." (Internal citations omitted.) *State v. Crowley,* 2d Dist. Clark No.2009 CA 65, 2009–Ohio– 6689, citing *State v. Travis,* 165 Ohio App.3d 626, 2006–Ohio–787, 847 N.E.2d 1237, ¶ 35 (2d Dist.).

*State v. Norris*, 2d Dist. No. 26147, 2015-Ohio-624, ¶ 11.

**{¶30}** Appellant contends close proximity in time is not the only indication of trustworthiness. He asserts the person to whom the statement is made must also be able to verify the statement to be true to show trustworthiness. In making this argument, Appellant references a staff note to Evid.R. 803(1), which states:

The circumstantial guaranty of trustworthiness is derived from the fact that the statement is contemporaneous and there is little risk of faulty recollection, and it is made to another who is capable of verifying the statement at the time it is made. There is no requirement that the statement be made under the influence of an emotion or trauma and it is limited to observations about the event that is taking place. The rule is identical to Federal Evidence Rule 803(1) except for the additional provision that the trial court may exclude such statements if the circumstances under which the statement was made indicate a lack of trustworthiness. The discretion vested in the trial judge is for the purpose of narrowing the availability of this exception.

Evid.R. 803 (1980 staff notes).

**{¶31}** In 1991, the Sixth Appellate District referenced the above note when a statement was made to an individual who was not capable of verifying the statement

at the time it was made since the individual was not present. *State v. Williams*, 6th Dist. No. L-90-175, 1991 WL 156545 (Aug. 16, 1991). The *Williams* Court provided the following explanation:

> "[T]he Ohio rule explicitly permits the exclusion of a statement that would otherwise qualify as a present sense impression if the 'circumstances indicate a lack of trustworthiness.' * * *

> "One of the guarantees of trustworthiness upon which the present sense impression exception is based is verification. For example, the following statement appears in the second edition of McCormick:

> "[T]he statement will usually have been made to a third party [the person who subsequently testifies to it] who, being present at the time and scene of the observation, will usually have an opportunity to observe the situation himself and thus provide a check on the accuracy of the declarant's statement (McCormick, *Evidence* § 298, at 710 (2d ed. 1972)).

> "But if the witness (the third party) heard the statement but did not perceive the event, this safeguard is not present. The 'lack of trustworthiness' clause was intended to protect against this possibility."

*Id.*, quoting Giannelli, *Ohio Evidence Manual*, Article VIII Hearsay, at 42 (1982).

**{¶32}** The appellate court found the trial court abused its discretion in admitting the hearsay statement for two reasons. *Id.* One, the statement was not made to an individual capable of verifying the accuracy of the statement. *Id.* Two, the statement was not made in close proximity of time to the perceived event. *Id.*

**{¶33}** Despite that reasoning and the staff note, courts have not relied on the verification of the accuracy of the statement to determine trustworthiness when the victim is the person making the statement to a third party who is not able to verify the accuracy. *State v. Wages*, 87 Ohio App.3d 780, 788, 623 N.E.2d 193 (8th Dist.1993) ("The statement made by the victim was made as she was perceiving the appellant driving up her driveway. The requirement of the circumstantial guarantee of

trustworthiness is met by the very nature of the victim's comment, despite the appellant's contention that the victim's observation needed to be independently verified."). Likewise, the verification of accuracy of the statement is not used to render 911 calls inadmissible since the 911 operator cannot verify the accuracy of the statement. Rather, 911 calls are usually considered admissible as either an excited utterance or a present sense impression. *Norris*, 2015-Ohio-624 at ¶ 12.

{¶34} In the situation before us, Appellant argues the statements lack trustworthiness because Melissa could not verify what Daralynn was telling her was true. Appellant asserts Melissa has incentive to fabricate the conversation with Daralynn to support Charles', her boyfriend, version of events. This is not a situation where a 911 operator, who is an independent third party, is hearing statements of a present sense impression or excited utterance. This court understands Appellant's point. However, the jury was in the best position to access Melissa's credibility. It could have chosen to disbelieve all, part or none of her testimony. *Kranek v. Richards*, 7th Dist. No. 11 JE 2, 2011-Ohio-6374, ¶ 26, citing *State v. Jackson*, 86 Ohio App.3d 29, 33, 619 N.E.2d 1135 (4th Dist.1993). Furthermore, it was within the trial court's discretion to determine whether the facts of this case indicated the statements lacked trustworthiness. Considering that standard, we hold the trial court did not abuse its discretion in allowing the testimony.

{¶35} That said, even if we found the trial court abused its discretion in permitting the hearsay statements to be admitted at trial, the inquiry does not end. Hearsay is subject to the harmless error doctrine. *State v. Hawk*, 10th Dist. No. 12AP-895, 2013-Ohio-5794, ¶ 50; *Williams*, 6th Dist. No. L-90-175, 1991 WL 156545. Error is harmless beyond a reasonable doubt when the remaining evidence constitutes overwhelming proof of the defendant's guilt. *State v. Williams,* 38 Ohio St.3d 346, 349–50, 528 N.E.2d 910 (1988).

{¶36} Here, any error would be considered harmless. Melissa's testimony as to what Daralynn saw during the altercation was not the only testimony indicating what occurred during the altercation. Charles testified Appellant hit him in the head with the gun and Appellant shot him in the left side of his back while he was going to his vehicle. Tr. 135, 137-138. An expert from BCI testified DNA taken from the gun

was consistent with Appellant's DNA profile; his rate of inclusion was 1 in 22,000 people. Tr. 246. As to whether Charles' DNA was found on the gun, the expert testified there was data present consistent with his DNA profile, but not in a high enough amount that it could be found to be an inclusion. Tr. 242. The investigating officers also testified. They confirmed the revolver used in the shooting was found by the officer sticking out of the driver's seat headrest and it contained three spent casing and three live rounds. Tr. 202, 213, 215-216, 221. Likewise, although Appellant testified he was never in control of the firearm, he did indicate that during the struggle over the gun, the gun went off. Tr. 301. Consequently, there is evidence other than Melissa's conversation with Daralynn that Appellant caused injury to Charles. Any hearsay error amounted to harmless error.

B. Confrontation Clause

{¶37} Prior to discussing the Confrontation Clause, it is noted Appellant does not argue a Confrontation Clause violation. His argument solely focused on hearsay and whether Daralynn's statements fall within a hearsay exception. The state is the party raising the Confrontation Clause and asserting there is no violation. While this court could decline to address the Confrontation Clause because it was not raised by Appellant, the following analysis is provided.

{¶38} A de novo standard of review is applied to a claim that a criminal defendant's rights have been violated under the Confrontation Clause. *State v. Barnette*, 7th Dist. No. 11 MA 196, 2014-Ohio-5673, ¶ 26.

{¶39} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

{¶40} In *Crawford v. Washington*, the United States Supreme Court held the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53-54, 124 S.Ct. 1354 (2004)

{¶41} The Confrontation Clause's protections are only invoked to bar the admission of out-of-court statements that are "testimonial." *State v. Muttart,* 116 Ohio St.3d 5, 875 N.E.2d 944, 2007–Ohio–5267, ¶ 59. 2. "In determining whether a

statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph two of the syllabus. This is an objective witness test; a statement is testimonial where a reasonable person would anticipate that his or her statement would be used "against the accused in investigating and prosecuting the crime." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 161; *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir.2004).

{¶42} Even though a hearsay statement may fall within an Evid.R. 803 exception to hearsay, it may nonetheless be inadmissible as a violation of the Confrontation Clause. *State v. Siler,* 164 Ohio App.3d 680, 2005–Ohio–6591, 843 N.E.2d 863, ¶ 49.

{¶43} Multiple courts have concluded that statements made to friends are nontestimonial. *Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677 at ¶ 162-164 (statement from declarant to friend. Declarant did not call the police until after she told a friend what husband (defendant) had told her.); *State v. Smith*, 5th Dist. No. 2012CA17, 2013-Ohio-1226, ¶ 26-27 (statements from voicemail days before event); *State v. Zadar,* 8th Dist. No. 94698, 2011-Ohio-1060, 2011 WL 826271, ¶ 38 (statements to a friend and a therapist not testimonial under "objective witness" test); *State v. Burnham*, 7th Dist. No. 09MA82, 2010-Ohio-3275, ¶ 23 (witness called friend to find out name of person who assaulted witness' husband); *State v. Peeples,* 7th Dist. No. 07 MA 212, 2009-Ohio-1198, 2009 WL 737922, ¶ 31 (statement to a friend not testimonial because objective witness would not reasonably believe that the statement would later be used at trial); *State v. Harris*, 7th Dist. No. 08 JE 39, 2009-Ohio-6804, ¶ 49 (The victim's statements to her best friend prior to her murder were not testimonial. There was no indication the victim reasonably believed the shared confidences regarding her black eye and her wish to leave appellant would be available for later use at trial.). When statements are made for the primary purpose of telling a friend, they are not made to aid in the prosecution or as the result of an

interrogation. *Smith* at ¶ 26; *State v. Ray*, 189 Ohio App.3d 292, 2010-Ohio-2348, 938 N.E.2d 378, ¶ 42-43 (8 Dist.2010).

**{¶44}** Since the statements by Daralynn were made to her friend Melissa, there is no indication they were made to aid in the prosecution. Melissa testified Daralynn called her to inform her that Charles was on the street. Once Charles did not leave, Daralynn informed Melissa what was occurring. This is merely a conversation between friends.

**{¶45}** Therefore, there is no violation under the Confrontation Clause.

C. Conclusion

**{¶46}** This assignment of error is meritless. The trial court did not abuse its discretion in allowing the hearsay testimony. However, even if it did, such error would amount to harmless error. This court also finds there is no Confrontation Clause violation.

Second Assignment of Error

"The trial court erred when it failed to grant a mistrial when a juror engaged in improper communication with the state's witness."

**{¶47}** After the jurors began deliberations, one of the jurors had improper communications with a witness, Detective/Sergeant Lambert. This was brought to the court's attention and the following occurred:

> **(WHEREUPON, eleven of the jurors left the courtroom and Juror No. 9, Angela M. Madeline, remained in the courtroom, and the proceedings continued as follows:)**
>
> **The Court**: We are not trying to single you out, but it is my understanding –
>
> **Juror Madeline**: I did. I did. I talked to him this morning.
>
> **The Court**: Can you tell us exactly what was said?
>
> **Juror Madeline**: I just asked him what if you guys got the wrong person, will charges be brought to, pretty much, Charles Pete. And I

said, well, of course, my big mouth, I said, I kind of feel that you got the wrong person.  So, yes, I did say something to him this morning.

**Mr. Zena**:  All right.

**The Court**:  Let me see counsel.

**(WHEREUPON, a discussion was had among court and counsel off the record and out of the hearing of Juror Madeline and the court reporter, after which the proceedings continued as follows:)**

**The Court**: Ma'am, you are going to remain on the jury.  However, during the rest of the deliberations do not make any expression as to the status of your deliberations or have any conversations about the case.

**Juror Madeline**:  I'm sorry.  I totally understand.

**(WHEREUPON, Juror No. 9, Angela M. Madeline, left the courtroom, and the jury continued deliberating:)**

**(WHEREUPON, the following proffer was placed on the record by Atty. Andrews [the state] outside of the hearing of the court, defense counsel, defendant and the jury as follows:)**

**Mr. Andrews**:  Based on what I believe that was Juror Number 9 that was speaking, Miss Madeline, based on her conversation with Detective/Sergeant Lambert this morning, which she initiated, the state would object to her staying on as a juror.

**(WHEREUPOON, the proffer concluded.)**

Tr. 426-428.

**{¶48}** This dialog and the state's proffer indicate the state objected to Juror Madeline remaining on the jury following an improper communication with Detective Lambert. However, the record is devoid of any indication Appellant objected to her

remaining on the jury or moved for a mistrial based on the alleged improper conduct. "If a party fails to express dissatisfaction with the trial court's handling of an issue, the issue is waived in the absence of plain error." *State v. Bunce,* 6th Dist. No. L–08–1237, 2010–Ohio–3629, ¶ 32, citing *State v. McKnight,* 107 Ohio St.3d 101, 837 N.E.2d 315, 2005–Ohio–6046, ¶ 185. *See also State v. Robinson*, 1st Dist. No. C-140043, 2015-Ohio-773, ¶ 23 (indicating cannot rely on objection of co-defendant to preserve argument for mistrial – with no objection all but plain error is waived). Therefore, plain error is the appropriate standard of review.

**{¶49}** In order to establish plain error, Appellant must demonstrate an obvious error that affected substantial rights "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); Crim.R. 52(B).

> Under Crim.R. 52(B), [p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be plain within the meaning of Crim.R. 52(B), an error must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights. We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Internal citations and quotations omitted.) *Barnes* at 27.

**{¶50}** The burden is on the party asserting plain error to prove "the outcome 'would have been different absent the error.'" *State v. Payne,* 114 Ohio St.3d 502, 2007–Ohio–4642, 873 N.E.2d 306, ¶ 17, quoting *State v. Hill,* 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

**{¶51}** In the situation before us, it was error for a juror to have a conversation with a witness. However, the error does not rise to the level of plain error.

{¶52} In a case where a state's witness could not think of the word he wanted to use during his testimony and a juror supplied that word, an appellate court found the error did not rise to the level of plain error because it could not be shown the outcome would have been different. *State v. Litten*, 9th Dist. No. 26812, 2014-Ohio-577, ¶ 30-31. Or, in other words, it could not be shown juror misconduct resulted in an unfair trial. *Id.*

{¶53} Here, the conversation and inquiry with the court do not show the outcome would have been different if Juror Madeline had been removed from the jury or a mistrial was warranted.

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*State v.* Owens, 9th Dist. No. 25873, 2012-Ohio-3667, ¶ 9, quoting *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940 (1982).

{¶54} It is easy to see why the state objected to Juror Madeline remaining on the jury; Juror Madeline's statements indicated she did not believe Appellant committed the crime. Her thought process, at that point in the deliberations, was favorable to Appellant. Nothing in the record before us indicates Juror Madeline's conversation was relayed to any other jurors or had any impact on other jurors. Furthermore, her own statements imply Detective Lambert did not respond to her question. Thus, while her attempt to converse with the witness was improper, the result of her attempt was benign. Consequently, given the trial court's admonishment

and the actual statements by the Juror, any error in failing to remove the juror or to grant a mistrial did not amount to plain error.

**{¶55}** The state asserts this is also invited error and we do not need to engage in a plain error analysis because invited error waives plain error. Under the invited error doctrine, "a party is not permitted to take advantage of an error that he himself invited or induced the court to make." *Davis v. Wolfe*, 92 Ohio St.3d 549, 552, 751 N.E.2d 1051 (2001).

**{¶56}** The state's assertion that invited error waives plain error is correct. *Faulks v. Flynn*, 4th Dist. No. 13CA3568, 2014–Ohio–1610, ¶ 22 (stating that "even plain error is waived where error is invited"). That said, the record is not clear this was invited error.

**{¶57}** The state asserts, "the record demonstrates that Defendant requested Angela M. Madeline to remain rather than to be excused." Appellee Brief pg. 20. That is not a completely accurate statement. The discussions concerning whether or not Juror Madeline would remain on the jury occurred off the record, outside the presence of a court reporter. There is no indication, considering on the record discussions, that Appellant **requested** Juror Madeline to remain. While it is true Appellant did not proffer an argument that she should not remain or that a mistrial should be granted, nothing on the record indicates there was an actual request for her to remain on the jury. Considering Juror Madeline's statements, it is possible Appellant argued against her removal. However, that is an assumption we will not make. If the state wanted to show the error was invited, the record should have been supplemented in accordance with App.R. 9.

**{¶58}** In conclusion, this assignment of error does not have merit. We hold the error was not invited, and Appellant failed to object to Juror Madeline's removal or to move for a mistrial. Therefore, our standard for review is plain error. The juror misconduct, given the record, does not amount to plain error.

### Third Assignment of Error

"The verdicts are against the manifest weight of the evidence."

**{¶59}** In addressing a manifest weight of the evidence challenge, this court must review the entire record, weigh the evidence and all reasonable inferences,

consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Id.*

**{¶60}** "When there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99–CA–149, 2002–Ohio–1152. This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04–BE–53, 2005–Ohio–6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶61}** Granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶62}** Appellant asserts the guilty verdicts for aggravated assault are against the manifest weight of the evidence. His argument focuses on the jury's not guilty verdicts on the attendant firearm specifications. He contends aggravated assault requires the use of a deadly weapon and/or serious physical harm. Since the jury found him not guilty of the firearm specification, he concludes the element of having a deadly weapon could not have been found. Appellant did admit to punching Charles in the jaw, however, there was no evidence this caused serious physical harm. Thus, he asserts the jury lost its way when it found him guilty of both counts of aggravated assault.

Appellant was convicted of R.C. 2903.12(A)(1) and (2), which provides:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation

occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

(1)    Cause serious physical harm to another * * *;

(2)    Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

R.C. 2903.12(A)(1), (2).

**{¶63}** He was found not guilty of the attendant firearm specifications as enumerated in R.C. 2941.145(A).  That provision states the offender "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."  R.C. 2941.145(A).

**{¶64}** As previously mentioned, there was testimony at trial that Appellant shot Charles.  Charles testified to that information and claimed the gun was Appellant's.  Tr. 137-138.  Melissa, by relating her conversation with Daralynn, also avowed to that information.  Tr. 174-175.  An expert from BCI testified Appellant's DNA was not found on the trigger of the gun; there was insufficient DNA for comparison.  DNA taken from the remainder of the gun was consistent with Appellant's DNA profile; he could not be excluded and his rate of inclusion was 1 in 22,000 people.  Tr. 246.

**{¶65}** Appellant contended the gun was Charles' and although there was a struggle over it, Appellant was never in control of the gun.  He, however, did admit that during the struggle the gun fired.  Tr. 301.

**{¶66}** There was also testimony Appellant either punched Charles in the jaw or hit him in the head with a gun.  Tr. 135.  The testimony, however, did not indicate what injury this caused.  The testimony about injury concerned the gunshot wounds.  No medical expert testified and no hospital records showed the extent of the head injury.

**{¶67}** Given the evidence, the trier of fact could have found the elements of aggravated assault.  It is undisputed Charles suffered serious physical harm from two

gunshot wounds. Furthermore, even if Appellant's testimony that the gun fired during a struggle over the gun was believed, this would show he acted knowingly. "Knowingly" is defined as, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). One is aware that struggling or fighting over a gun will probably cause the gun to go off and someone will be injured. *See State v. Stephens*, 11th Dist. No. 2001-T-0044, 2002-Ohio-2976, ¶ 29-30 (during tussle loaded weapon went off and it was determined person acted knowingly).

{¶68} Appellant's position that the verdicts are against the manifest weight of the evidence also focuses on the not guilty finding on the firearm specifications; he contends the verdicts are inconsistent. This argument is raised in the fourth assignment of error and will be addressed there.

{¶69} For all the above reasons, we hold this assignment of error lacks merit. The convictions for aggravated assault as enumerated in R.C. 2903.12(A)(1) and (2) are not against the manifest weight of the evidence. There was evidence, if believed, that would support a conviction for aggravated assault with a deadly weapon and aggravated assault causing serious physical harm. Admittedly, the only evidence of serious physical harm comes from use of the weapon. However, that does not mean the guilty verdicts are against the manifest weight of the evidence.

Fourth Assignment of Error

"The verdicts are contrary to the law, plain error."

{¶70} Appellant was found guilty of aggravated assault in violation of R.C. 2903.12(A)(1) and (2). Those provisions, respectively, require serious physical harm or use of a deadly weapon or dangerous ordnance. The only evidence of serious physical harm was the gunshot wounds; there was no evidence the punch to the jaw or hitting him in the head with the gun caused serious physical harm. The only evidence of a deadly weapon or dangerous ordnance was the firearm. However, the jury found Appellant not guilty of R.C. 2941.145(A), the attendant firearm specifications. That provision stated the offender "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed

the firearm, or used it to facilitate the offense." Appellant argues the guilty verdicts for aggravated assault are inconsistent with the not guilty verdicts for the attendant firearm specifications.

**{¶71}** In support of his position that the verdicts are inconsistent, he cites this court to our decision in *Wright*. *State v. Wright*, 2013-Ohio-1424, 990 N.E.2d 615, ¶ 36 (7th Dist.) (majority Donofrio, J. and Vukovich, J.; dissent DeGenaro, J.). In that case, *Wright* was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that no person shall knowingly "cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." *Id.* at ¶ 30. However, he was found not guilty of the attendant firearm specification. *Id.* at ¶ 31. The majority determined the verdicts were inconsistent and ordered a new trial. *Id.* at ¶ 40. In rendering this decision the majority discussed two Ohio Supreme Court cases, *Koss* and *Perryman*.

**{¶72}** The Ohio Supreme Court's decision in *Koss* dealt primarily with whether expert testimony regarding battered women syndrome was admissible to assist the trier of fact in determining whether the defendant acted in self-defense. *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990). The Ohio Supreme Court determined it could be admissible. *Id.* at 218. However, in that case the appellant also argued the jury's guilty verdict of voluntary manslaughter was inconsistent with the not guilty attendant firearm specification when considering the evidence. In two paragraphs of analysis, the Ohio Supreme Court concluded the verdicts were inconsistent:

> The record clearly establishes that the victim died of a gunshot wound to the head. Appellant testified at trial that she remembers observing the gun on the nightstand and reaching for it. Although she stated that she "must have picked" up the gun, she does not remember firing it. The gun was not positively identified as the murder weapon, but the bullets remaining in the gun were similar to the type of bullet used to kill the victim.

> In view of the evidence which demonstrates that the victim died of a gunshot wound, we must find that the jury's verdict that appellant was guilty of voluntary manslaughter but not guilty of having "a firearm on or about her person or under her control while committing the offense" is inconsistent. The jury not having found appellant guilty of the gun specification, the prosecution will not be permitted to retry her on the specification upon remand.

*Id.* at 219.[1]

**{¶73}** In making this decision, the Ohio Supreme Court does not reference its earlier decision *Perryman*. In *Perryman*, the Court held that the principal charge and the specification are not interdependent. *State v. Perryman*, 49 Ohio St.2d 14, 25-26, 358 N.E.2d 1040 (1976). Specifications are considered after and in addition to the finding of guilt on the principle charge. *Id.* Therefore, any determination as to the specification cannot change the finding of guilty on the principal charge. *Id.*

**{¶74}** The debate between the majority and dissent in *Wright* was whether *Koss* or *Perryman* was applicable. *Wright*, 2013-Ohio-1424 at ¶ 36-38, 54-58. The majority held the more persuasive view was to follow *Koss*, in part because it was the most recent Ohio Supreme Court decision. *Id.* at ¶ 36-38. The dissent disagreed and found that *Perryman* was applicable. *Id.* at ¶ 56-58.

**{¶75}** Since our decision in *Wright*, no other appellate court has adopted or criticized our decision to apply *Koss* over *Perryman*. However, since our decision appellate courts have followed the rationale in *Perryman*. *State v. Smith*, 2d Dist. No. 26116, 2015-Ohio-1328, ¶ 17; *State v. Ayers*, 10th Dist. No. 13AP-18, 2013-Ohio-5601, ¶ 24-25 (appellate courts have limited the precedential impact of the *Koss* decision to cases involving voluntary manslaughter).

---

[1] The inconsistent verdict ruling in *Koss* may be considered dicta. At the time *Koss* was decided the syllabus constituted a part of the opinion. The syllabus does not set forth a holding on inconsistent verdicts. Rather, the syllabus' focus is mostly on the battered women's defense. The body of the opinion discusses battered women's syndrome first and sets forth that as a basis for reversing the trial court's decision and remanding. The trial court in *Koss* excluded expert witness testimony regarding battered women's syndrome. The Supreme Court reversed and remanded the matter due to that error. Although the Supreme Court addressed inconsistent verdicts, it was not required to do so. Upon remand of the battered women's syndrome issue, Appellant could not be retried for the gun specification because she was found not guilty of that specification. Thus, the Court's indication that the verdicts were inconsistent and Appellant could not be retried on the gun specification was superfluous.

**{¶76}** Given the language of *Koss* and *Perryman* and the most recent decisions of our sister districts that have applied *Perryman* and limited the precedential value of *Koss*, we overrule our *Wright* decision and hold that *Perryman* is the more persuasive view when determining, in general, whether the verdict on the principal charge and the specification are inconsistent.

**{¶77}** Accordingly, considering *Perryman*, the verdicts in this case are not inconsistent. The principal charge of aggravated assault and the gun specification are not interdependent. *Perryman*, 49 Ohio St.2d at 25-26. Any determination as to the specification cannot change the finding of guilty on the principal charge. *Id*.

**{¶78}** This assignment of error lacks merit.

<u>Conclusion</u>

**{¶79}** The assignments of error are meritless. Appellant's conviction and sentence are affirmed. However, the case is also remanded for the limited purpose of entering a nunc pro tunc sentencing entry to a correct a clerical error in the July 9, 2015 sentencing judgment entry. As noted in the recitation of the facts, the trial court mistakenly stated Appellant was convicted of R.C. 2903.12(A)(1)(B) and R.C. 2903.12(A)(1)(B). 7/9/15 J.E. The judgment entry should indicate Appellant was convicted of R.C. 2903.12(A)(1)(B) and R.C. 2903.12(A)(2)(B).


Donofrio, P.J., concurs.

DeGenaro, J., concurs.